UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALAN QUIELLO,<br>    Plaintiff, | :<br>: |
| v. | : CIVIL ACTION NO.<br>: 3:04-CV-2141(JCH) |
| REWARD NETWORK<br>ESTABLISHMENT SERVICES, INC.,<br>    Defendant. | :<br>: MAY 16, 2006<br>: |

**RULING RE: DEFENDANT'S MOTION FOR RECONSIDERATION [DOC. NO. 68]**

The plaintiff, Alan Quiello, brings this lawsuit against the defendant, Reward Network Establishment Services, Inc. ("RNI"), asserting claims for breach of contract and violations of Conn.Gen.Stat. §§ 31-71(e), 31-72, and 31-73 that arise out of Quiello's employment compensation arrangement with RNI.

This action was properly brought in this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.

On March 7, 2006, this court ruled on the parties' cross-motions for summary judgment [Doc. Nos. 13 and 27]. Ruling, 3/7/06 [Doc. No. 61]. The court granted Quiello's motion for partial summary judgment as to Counts I and II of his Complaint and denied Quiello's motion for partial summary judgment as to Count IV of his Complaint. Id. at 22. The court also granted RNI's motion for summary judgment as to Counts III and IV of Quiello's Complaint, as well as to Count V in part, and denied RNI's motion for summary judgment as to Counts I and II of Quiello's Complaint. Id. In so ruling, the court found, inter alia, that RNI's interpretation of Quiello's employment agreement was not reasonable because, among other reasons, it would create an illusory contract. Id. at 13.

RNI now moves for reconsideration of the court's Ruling to the extent that it granted summary judgment to Quiello on Counts I and II of the complaint. RNI argues, inter alia, that evidence it received from Quiello after the motions for summary judgment were decided demonstrates the existence of a genuine issue of material fact with regard to his claim, and that the court overlooked some evidence bearing on the question of the reasonable interpretation of the employment agreement. For the following reasons, RNI's motion for reconsideration is DENIED in part and GRANTED in part, but the court adheres to its previous rulings on the parties' cross motions for summary judgment.

**I.    LEGAL STANDARD**

"The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790). The standard for granting a motion for reconsideration is strict. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (internal citations omitted). "A motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." SPGGC, Inc. v. Blumenthal, 408 F.Supp.2d 87, 91 (D.Conn. 2006) (internal citation and quotation marks omitted). "It is also not appropriate to use a motion to reconsider solely to re-litigate an issue already decided." Id. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court." Shrader, 70 F.3d at 257.

## II.   DISCUSSION

The court assumes the reader's familiarity with its Ruling Re: Cross Motions for Summary Judgment, Quiello v. Reward Network Establishment Services, Inc., 420 F.Supp.2d 23 (D.Conn. 2006).  RNI raises two separate grounds in its Motion for Reconsideration.

### A.   Evidence Concerning Quiello's Job Responsibilities

In its analysis of the parties' competing interpretations of Quiello's employment agreement with RNI in its previous ruling on the parties' cross motions for summary judgment, the court relied, in part, on its finding that there was no genuine issue of material fact as to whether Quiello's responsibilities with regard to a restaurant account substantially consisted of procuring the initial contract with the restaurant.  RNI argues that a genuine issue of material fact regarding the extent of Quiello's other job responsibilities does, in fact, exist.  In support of this argument, RNI cites to evidence that was not included in the record for the summary judgment, which it received from Quiello after the court's ruling was issued, as well as evidence that was in the record on summary judgment.

As an initial matter, the court notes that, in its March 7, 2006 Ruling, it misdescribed RNI's position at oral argument with regard to Quiello's job responsibilities.  RNI did not, as the court had recalled, acknowledge at oral argument that Quiello's job responsibilities substantially consisted of securing initial contracts. See 3/7/06 Ruling, p. 3; 2/17/06 Oral Arg. Tr. [Doc. No. 65], pp. 33-34.  However, the

court also notes that, in its reply memorandum in support of its motion for summary judgment, RNI does appear to acknowledge the "fact" that Quiello had no responsibility after "booking" a restaurant. Def's Reply Memo. [Doc. No. 37], p. 17. It was nonetheless inaccurate to imply that, as a matter of admission, no genuine issue of material fact exists with regard to Quiello's job responsibilities. Accordingly, the court grants RNI's motion for reconsideration with respect to this issue.

Nonetheless, after reviewing the documents submitted by RNI in support of its motion for reconsideration, the court maintains its previous holding that no genuine issue of material fact exists with regard to whether Quiello's responsibilities with regard to a restaurant account <u>substantially</u> consisted of procuring the initial contract with the restaurant.[1] The documents, which consist of internal memos and minutes of internal meetings within RNI's predecessor company from 1997 and 1998, do lend some support to RNI's contention that Quiello had continuing responsibilities to service the accounts of the restaurants from which he procured contracts. Several of the documents, for example, allude to the responsibility of sales personnel to assist with loss recovery in the event of a restaurant closing and to maintain contact with restaurants regarding their "terminal" equipment. <u>See</u> Mishra Dec. [Doc. No. 70], Ex. A., pp. 000014, 000018, 000026. RNI also cites for support to language in the 1997

---

[1] RNI makes much of the fact, in its motion for reconsideration, that it received the documents in question after the court had ruled on the parties' motions for summary judgment, in response to a different discovery request. <u>See</u> Def's Memo. in Supp. of Def's Mot. for Recon. [Doc. No. 69], p. 5. However, as Quiello has demonstrated, RNI only requested documents "concerning the time period of December 22, 2001 through the present time," and thus did not request the specific documents in question, which were created in 1997 and 1998. Ottinger Dec. [Doc. No. 73], Ex. 6 (Defendant's First Request for Production of Documents).

Job Description for Transmedia Restaurant Consultants ("1997 Plan") that details responsibilities other than contract procurement for sales representatives such as Quiello. Ottinger Dec., Ex. 1.

However, the majority of the directives contained within the newly submitted documents concern the initial procurement of restaurant contracts. See, e.g. id. at pp. 000008, 000009-14, 000016. In addition, while the 1997 Plan contains job responsibilities other than contract procurement, the court was aware of this general fact when it ruled on the parties' motions for summary judgment. The court did not hold that Quiello's job consisted solely of procuring contracts, but merely that, for any given restaurant account, Quiello had substantially completed his part of his bargain with RNI when the contract procurement was completed. When the proffered documents and 1997 Plan are read together and as a whole, in light of the compensation structure contained in the 1997 and subsequent plans, RNI has not demonstrated that a genuine issue of material fact exists as to whether Quiello's responsibility for a given account substantially consisted of procuring the initial contract for the account.

Moreover, it is important to place this holding in the context in which it appears in the court's Ruling on the motions for summary judgment. The fact that Quiello's responsibilities for a given account are substantially completed when the contract is procured merely lends credence to Quiello's contention that his interpretation of his employment agreement, i.e., that the rate of commission on an account vests when a contract is procured, is the only reasonable one under the circumstances. The job responsibilities identified by RNI do not call into question the reasonableness of this interpretation. The "contract servicing" responsibilities identified by RNI serve to

"maintain the value" of a restaurant contract after it had been procured—a value largely determined at the time of procurement, subject to the vagaries of customer usage and the restaurant industry. Undertaking these responsibilities does not imply that it would be reasonable, or non-illlusory, for RNI to retroactively change the value, <u>to Quiello</u>, of a contract that he had already procured but for which usage remained outstanding. Accordingly, Quiello's interpretation of the employment agreement remains the only reasonable method of avoiding the illusory contract concerns discussed by the court in its March 7, 2006 Ruling. 3/7/06 Ruling, p. 13. Therefore, the court adheres to its previous holding with regard to Quiello's partial motion for summary judgment on this basis.

      **B.**    **Interpretation in Light of the Parties' "Past Practice"**

RNI also asserts that the court should reconsider its March 7, 2006 Ruling to the extent that it granted summary judgment on Counts I and II to Quiello because, in its view, the court "overlooked" the past practices of the parties when determining that RNI's interpretation of the employment agreement would create an illusory contract. Def' Memo. in Supp. of Def's Mot. for Recon., p. 6. In particular, RNI argues that the court overlooked the parties' conduct in 2002 when RNI changed the commission rate on previously procured contracts in a manner that benefitted Quiello, and Quiello did not complain.

RNI previously raised this same argument in its initial motion for summary judgment, and the court considered it when ruling on the parties' motions. <u>See</u> Def's Memo. of Law. in Supp. of its Mot. for Summ. Judg. [Doc. No. 15], pp. 11-13. The court did not overlook this argument when evaluating the parties' interpretation of the

6

employment agreement in question.  The court is not persuaded that the fact that Quiello did not object to the change in commission rate in 2002 when the change benefitted him renders RNI's interpretation of the agreement reasonable.  In particular, the past practices of the parties do not alleviate the illusory nature of RNI's interpretation of the contract, i.e., that it had the discretion under the terms of the contract to change the rate of compensation for work that already had been substantially completed.[2]  See O'Sullivan v. Bergenty, 214 Conn. 641, 656 (1990)(Shea, J., dissenting)("Words of promise do not constitute a promise if they make performance entirely optional with the purported promisor . . . [w]here the apparent assurance of performance is illusory it is not consideration for a return promise.")((quoting 1 Restatement (Second), Contracts §§ 76-77)).  Accordingly, the motion for reconsideration is DENIED as to this basis.

---

[2] In its reply memorandum in support of its motion for reconsideration, RNI raises, for the first time, the argument that an implied covenant of good faith can be read into the contract to avoid a finding that RNI's discretion under the contract rendered it illusory.  See Sadowski v. Dell Computer Corp., 268 F.Supp.2d 129, 136 (D.Conn.2003)("[W]here possible, courts will imply a limited obligation of good faith or reasonableness in the exercise of such discretion to avoid an illusory promise . . . .").  RNI did not raise this argument in its summary judgment pleadings, or in its initial memorandum in support of its motion for summary judgment.  It is, therefore, not a proper basis for reconsideration, and RNI's motion for reconsideration is DENIED as to this basis.  See SPGGC, Inc. v. Blumenthal, 408 F.Supp.2d at 91 ("A motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made."); Loc. R. Civ. P. 7(d) ("A reply brief . . . must be strictly confined to a discussion of matters raised by the responsive brief. . . .").

Moreover, the interpretation of the employment agreement urged by RNI, under which it would have had the discretion to change the commission rate for work previously performed, is not consistent with an obligation of good faith, and, thus, such an implied obligation cannot save the defendant's interpretation of the contract in this instance.  See LaVelle v. Ecoair Corp., No. CV010447843S, 2001 WL 1178838, at *5 (Conn. Super. Sept. 7, 2001), aff'd, 74 Conn.App. 710 (Conn. App. 2003); see also Middletown Comm. Assocs. v. City of Middletown, 53 Conn. App. 432, 437 (Conn. App. 1999)("Every contract carries an implied covenant of good faith and fair dealing . . . .  Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended.").

**III.    CONCLUSION**

For the foregoing reasons, the defendant's motion for reconsideration [Doc. No. 68] is GRANTED in part and DENIED in part.  The court adheres to its previous March 7, 2006 Ruling [Doc. No. 61] on the parties' cross motions for summary judgment.

**SO ORDERED.**

Dated this 16th day of May, 2006, at Bridgeport, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge